Background faUNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BURUJAH ISMAIL,                              Civil Action No. 15-12208

     Plaintiff,                             HON. LAURIE J. MICHELSON
                                     U.S. District Judge
v.                                           HON. R.  STEVEN WHALEN
                                     U.S. Magistrate Judge

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Burujah Ismail ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #17] be GRANTED to the extent that the case be remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment [Dock. #20] be DENIED.

# I.  PROCEDURAL HISTORY

On October 30, 2012, Plaintiff filed applications for DIB and SSI, alleging disability as of July 18, 2012 (Tr. 159-160, 161-169).   After the initial denial of the claim, she requested an administrative hearing, held on December 17, 2013 in Detroit, Michigan before Administrative Law Judge ("ALJ")  Oksana Xenos (Tr. 48).   Plaintiff, represented by attorney Danielle Stoner, testified (Tr. 51-62), as did Vocational Expert ("VE") Diane Regan (Tr. 63-66).  On January 29, 2014, ALJ Xenos found that Plaintiff was not disabled (Tr. 35-44).  On May 1, 2015, the Appeals Council denied review (Tr. 1-5).  Plaintiff filed for judicial review of the Commissioner's decision on June 17, 2015.

# II.  BACKGROUND FACTS

Plaintiff, born April 16, 1972, was 41 when the ALJ issued her decision (Tr. 44, 159). She completed two years of college and worked previously as a concession worker, department store sales person, and designer (Tr. 181).  She alleges disability as a result of back problems and muscle spasms (Tr. 180).

## A.    Plaintiff's Testimony

 Plaintiff offered the following testimony:

 She stood 5' 8" and weighed 226 pounds (Tr. 51).  She was currently enrolled in online college courses (Tr. 51).   She was pursuing a four-year degree in "business foundations" (Tr. 52).  She currently lived with her husband in a home that they owned (Tr. 52).  She last worked in 2012 as a fitting room associate in a department store (Tr. 52).  She

also worked formerly as a carpet salesperson and performed work involving makeup application, fashion shows, and sewing (Tr. 53).

In July, 2012, Plaintiff, then six months pregnant, became disabled after she was accidently shut between the doors of a bus (Tr. 53). Due to the incident, Plaintiff continued to have headches, nausea, concentrational issues, and spine and neck problems (Tr. 54). She was unable to sit for more than 20 minutes or stand for more than 15 (Tr. 54-55). She could walk a city block "at times" (Tr. 55). She was unable to lift more than five pounds (Tr. 55). She did not have a driver's license (Tr. 55). She experienced problems getting out of bed and performing even light household chores due to back pain (Tr. 55-55). She did not shop for groceries (Tr. 56). She enjoyed reading about new technology, marketing, business, law, and ethics (Tr. 56). She spent one to two hours a day studying online (Tr. 57).

In response to questioning by her attorney, Plaintiff reported headaches three to four times a week lasting for two to three hours (Tr. 57-58). She acknowledged that the headache condition was improving (Tr. 57). She testified that she took pain medication (Tr. 58). Plaintiff alleged that fatigue and pain caused concentrational problems, estimating that she reclined for "three to four" hours for "three to four days" of the week (Tr. 58). She alleged that she did not sleep more than three hours a night (Tr. 59). She reported that she had experienced neck pain since 2004 when a mentally ill individual assaulted her during a stint as a bartender (Tr. 59, 61-62). She testified that the July, 2012 accident worsened her neck pain (Tr. 59). She reported problems turning her neck sideways and bending (Tr. 59). She

alleged the medication side effects of stomach pain and dizziness (Tr. 60). She reported improvement in her condition from both physical therapy and epidural steroid injections (Tr. 60). On a scale of one to ten, she rated her pain level at "ten" (Tr. 60-61). She reported that the back pain radiated to her lower extremities (Tr. 61). Plaintiff testified that Carpal Tunnel Syndrome caused her hands to lock up, causing problems typing and gripping (Tr. 61).

### B.   Medical Evidence

#### 1. Treating Sources

Emergency room records created after the July, 2012 bus incident note Plaintiff's report of "mild" pain (Tr. 266). She was diagnosed with "minor blunt injury" to the abdomen (Tr. 267). Her condition was deemed "good" at discharge (Tr. 267). In July, 2012, chiropractor Keith Denning, D.C. issued a "Disability Certificate," stating that Plaintiff was disabled until October 23, 2012 due to cervical and lumbar spine dislocation causing radiculitis and upper and lower extremity paresthesia (Tr. 220, 359-360). Plaintiff delivered a healthy infant on October 1, 2012 (Tr. 263). She underwent spinal traction later in October, 2012 (Tr. 227). Dr. Denning found that she was disabled for the following month (Tr. 296). Treating records note Plaintiff's report that a "metal beam" fell on her back in 1997 (Tr. 292). Plaintiff reported taking Motrin (Tr. 292). Arvinder Dhillon, M.D. examined Plaintiff, finding that the July, 2012 bus incident was "a direct and proximate cause of injury" to the spine (Tr. 326). On October 31, 2012, Plaintiff was given another work excuse by a chiropractor (Tr. 290). The following month, Plaintiff denied significant improvement in

-4-

most symptoms but acknowledged modest improvement in the lower back, right leg, and right arm (Tr. 231, 233, 235, 237).  The same month, an MRI showed disc bulges at C2-3, C3-4, C5-6, C6-7 and C7-T1 with impingement on the thecal sac but no stenosis (Tr. 287, 308).  An MRI of the lumbar spine showed disc bulge with impingement on the thecal sac at L4-5 and L5-S1 with "mild" neuroforaminal compromise (Tr. 288, 307).  Later the same month, Dr. Dillon observed full muscle strength and "mild distress" (Tr. 321-322).  In December, 2012, Dr. Denning issued another disability certificate (Tr. 295, 364).  The same month, Dr. Dillon noted Plaintiff's report that she experienced some improvement from chiropractic treatment (Tr. 312).

In January, 2013, Dr. Denning issued another disability certificate due to pareshesia in all extremities, headaches, and neck and back pain (Tr. 221-226).  On a scale of one to ten, Plaintiff reported "seven" or "ten" pain in all areas (Tr. 222, 257).  Dr. Denning noted that by Plaintiff's account, she was "severely disabled by pain" (Tr. 223).   Dr. Denning administered heat treatment and performed a chiropractic adjustment (Tr. 230, 241, 257).

The same month, chiropractors Richard Ruffini, D.C. and Shelby Glazer, D.C. noted that Plaintiff's condition had not improved despite traction and heat therapy (Tr. 335).  Dr. Dhillon performed a followup neurological examination (Tr. 312-313), finding 5/5 muscle strength and the absence of muscle atrophy (Tr. 310).  He noted decreased deep tendon reflexes in the bilateral triceps and Achilles (Tr. 310).  He noted that a November, 2012 EMG showed evidence of right C-7 and L5-S1 radiculopathy and bilateral CTS (Tr. 310,

314-316). Dr. Dhillon noted the presence of head, neck, and lower back aches, spasms, and bilateral CTS (Tr. 311). He found that Plaintiff was "an excellent candidate" for epidural steroid injections (Tr. 311). The following month, Dr. Denning noted Plaintiff's report of worsening neck pain and generally "slow improvement" (Tr. 338-339, 341). The following month, Plaintiff reported "slight improvement in neck pain" (Tr. 345). April, 2013 records note improvement in neck and lumbar spine pain (Tr. 349). Drs. Denning and Ruffini found that the back condition was "chronic" (Tr. 351). Dr. Ruffing found that Plaintiff continued to be disabled from work (Tr. 362-363). The following month, Dr. Ruffini found that Plaintiff had "reached a plateau" (Tr. 355).

In November, 2013, Shawn Nelson, D.C. completed a Physical Residual Functional Capacity Questionnaire, noting diagnoses of cervical and lumbar spine dislocations, with disc herniations, radiculopathy, muscle spasms, and headaches (Tr. 328). He noted symptoms of back pain, shoulder pain, and leg and arm pain and numbness (Tr. 328). He found that Plaintiff would be off task for at least 25 percent of the work day (Tr. 329). He opined that Plaintiff was unable to walk more than two city blocks or sit for more than 30 minutes or stand for more than 15 (Tr. 329). He found that Plaintiff would be unable to sit, stand, or walk for more than two hours in an eight-hour work day (Tr. 330). He found that Plaintiff was required to walk every 15 minutes for a total of five minutes and required work allowing her to change position as needed (Tr. 330). He found that Plaintiff did not require an assistive device (Tr. 330). He limited her to lifting less than 10 pounds on an occasional

-6-

basis and moving her neck on a rare basis (Tr. 330). He found that she could hold her head in a static position on an occasional basis (Tr. 330). He precluded Plaintiff from crouching, and climbing of ladders but found that she could twist, stoop, or climb stairs on a rare basis (Tr. 331). He found that she was limited to reaching for less than five percent of the work day and that she would typically miss more than four days of work each month due to her medical conditions (Tr. 331).

### 2.   Non-Treating Sources

In February, 2013 Cynthia Shelby-Lane, M.D. performed a consultative examination on behalf of the SSA, noting Plaintiff's report of cervical dislocation after a 1999 motor vehicle accident (Tr. 297). Plaintiff reported that she was later "assaulted with broccoli" but did not receive treatment (Tr. 297). Plaintiff also reported that she was injured when a music console box dropped on her in 1997 (Tr. 297). She stated that since the July, 2012 bus incident, she was hit "with a box of stock" on January 8, 2013 while shopping at a dollar store (Tr. 298). Plaintiff reported pain throughout her entire body (Tr. 298). She currently received traction, hot and cold packs, therapeutic exercise, and chiropractic adjustments (Tr. 298). She took Mobic daily (Tr. 298). She denied using a cane or other walking aide but reported pain while "stooping, squatting, standing, arising, lying down, and sleeping (Tr. 298). Dr. Shelby-Lane noted good grip strength, better on the right than left (Tr. 302).

Dr. Shelby-Lane noted a slow but normal gait and a limited ability to squat (Tr. 299). She found that Plaintiff needed "ongoing management for . . . chronic pain" and could

experience "difficulty with repetitive lifting, pushing, pulling . . . reaching [and] bending (Tr. 299).

The following month, Stephen E. Wood, M.D. performed a non-examining review of the treating and consultative records, finding that Plaintiff was capable of lifting 20 pounds occasionally and 10 frequently; sitting, standing, or walking for six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 91). He found that Plaintiff was limited to occasional climbing, stooping, and crawling; and frequent balancing and kneeling (Tr. 91-92). He noted that he considered Listing 1.04 in making his determination (Tr. 90). He remarked that Plaintiff's chiropractors were not acceptable medical sources (Tr. 91).

### C. Vocational Expert Testimony

The VE classified Plaintiff's past relevant work as a retail clerk and concession worker as semiskilled and exertionally light;[1] telemarketer, semiskilled/sedentary; construction worker, semiskilled/heavy; and home health aide, semiskilled/medium (Tr. 210). The ALJ posed the following question to VE Regan, describing a hypothetical individual of Plaintiff's age, education and work experience:

---

[1]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

[C]an perform work at the light exertional level; cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs and ramps; balance, stoop, kneel, crouch, and crawl; can frequently reach and handle; can occasionally flex her neck sideways and upwards; and should avoid hazards such as moving machinery and unprotected heights.  Can an individual with that residual functional capacity and given profile perform any of the claimant's past work?

The VE replied that the above limitations would not preclude Plaintiff's past relevant work as a telemarketer, concession worker, or retail clerk (Tr. 63).  The VE testified further that Plaintiff could perform the light, unskilled work of a packer (6,000 positions in southeastern Michigan); sorter (5,000); and inspector (6,000) (Tr. 64).  The VE found that if the limitations were amended to include a "sit/stand at will option," all of the past relevant work would be eliminated and the job numbers for the positions of packer, sorter, and inspector would be halved (Tr. 64-65).  The VE testified further that if the original hypothetical were for sedentary rather than light work (including the sit/stand at will option), the hypothetical individual could perform the work of a packer (3,000); assembler (3,000); and inspector (2,000) (Tr. 65).  The VE testified that if the same individual were additionally limited to occasional reaching and handling, the sedentary packer, assembler, and inspector jobs would be eliminated but the individual could perform the work of a surveillance system monitor (800) (Tr. 65).

The VE testified that if the individual were off task up to 20 percent of the workday due to pain and other impairments, or, was unable to sit, stand, or walk for a total of eight hours a day five days a week, all competitive employment would be eliminated (Tr. 65-66).  The VE stated that her testimony was consistent with the information found in the *Dictionary*

*of Occupational Titles* ("*DOT*"), except for her testimony regarding a sit/stand option, which was based on her own experience (Tr. 66). In response to questioning by Plaintiff's attorney, the VE stated that the need to miss more than four days of work each month would be work preclusive (Tr. 66).

### D. The ALJ's Decision

Citing the medical records, ALJ Xenos found that Plaintiff experienced the "severe" impairments of "cervical and lumbar spine disorders; carpal tunnel syndrome; [and] headaches" but that none of the conditions met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 37-38). She found that the condition of obesity was non-severe (Tr. 38). The ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") for light work with the following additional limitations:

> [T]he claimant cannot climb ladders, ropes, or scaffolds; can only occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl; can frequently handle and reach; and can occasionally flex her neck sideways and upwards. The claimant should avoid hazards, such as moving machinery and unprotected heights. The claimant requires a sit/stand, at will, option at the workstation (Tr. 38).

Citing the VE's job numbers, the ALJ determined that while Plaintiff was unable to perform any of her past relevant work, she could work as a packer, sorter, or assembler (Tr. 43).

The ALJ discounted the allegations of disability. She noted that the allegations of disability were inconsistent with the medical records and Plaintiff's acknowledged daily activities (Tr. 41). The ALJ observed that Plaintiff's treatment had been "routine and/or conservative," noting that although Plaintiff complained of intractable pain, she did not take

-10-

narcotic-based agents and did not require the use of a cane (Tr. 41).  The ALJ cited the February, 2013 consultative findings of full muscle strength and the absence of neurological deficits (Tr. 41).  The ALJ found that Plaintiff's acknowledgment that she was able to cook, clean, attend church, watch television, read, and take online college classes undermined the disability claim (Tr. 42).  She cited Plaintiff's December, 2012 statement that she wanted disability "'only because I have been working as a hard tax paying citizen ever since 1984" (Tr. 42, 202).

## III.  STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence.  42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir.  1985).  Substantial evidence is more than a scintilla but less that a preponderance.  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)).  The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir.  1986)(en banc).  In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative

-11-

record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV.  FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

# V.  ANALYSIS

## The ALJ's Step Three Analysis

Plaintiff argues that the administrative decision does not contain a reasoned explanation for the the Step Three finding that she did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Plaintiff's Brief,* 12-18. Plaintiff contends that the ALJ's  conclusion that she did not meet a listing is inadequate for "'meaningful judicial review.'" *Id* at 13-14 (*citing M.G. v. CSS,* 861 F. Supp. 2d 846, 856 (E.D. Mich. 2012)).

"At the third step of the administrative analysis, a claimant meeting or medically equaling the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits." *Reynolds v. Commissioner of Social Security*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2 (6th Cir. April 1, 2011); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). "Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Id.* (citing 20 C.F.R. § 404.1525(a)).  While "[t]he Sixth Circuit 'does not require a heightened articulation standard from the ALJ at Step Three of the sequential evaluation process' *Grohoske v. Comm'r of Soc. Sec.,* 2012 WL 2931400, *3 (N.D.Ohio, July 18, 2012)," it "has made clear the step-three 'reasons requirement is both a procedural and substantive requirement, necessary in order to facilitate effective and meaningful judicial

-13-

review.'" *Brock v. Colvin,* 125 F.Supp.3d 671, 672 (N.D.Ohio, 2015)(*citing Reynolds,* 424 Fed.Appx. at 414).   Nonetheless, the Court may "overlook the ALJ's failure to articulate his Step Three findings" if the error is found to be "harmless in nature." *M.G., supra,* 861 F.Supp.2d 846, 859 (E.D. Mich.2012)(*citing Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir.2008)).

Plaintiff contends that evidence supports the finding that she meets Listing 1.04A (Disorders of the Spine).   The threshold requirement of Listing 1.04 can be met with "evidence of a herniated nucleus . . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord."   20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.04. Plaintiff notes that the November, 2012 MRI of the cervical spine showing herniations at C6-C7 and T1-T2 and the MRI of the lumbar spine showing disc bulge with impingement on the thecal sac at L4-5 and L5-S1  satisfy the Listing's threshold requirement (Tr. 287-288).   She contends that along with the threshold requirement, she meets  subsection A of the Listing:

> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . ."  § 1.04.

The ALJ's rationale for her Step Three finding is limited to the following:

> Although the claimant has the severe impairments listed above, the impairments, or combination of impairments, do not meet or medically equal the specific criteria for any impairment listed in Appendix 1, Subpart P, Regulations No. 4.  The medical opinion of the State agency and consultative physician supports this finding (Tr. 38).

-14-

The finding includes the transcript exhibit number of Dr. Woods' March, 2013 non-examining findings but does not include discussion of the findings (Tr. 38). Dr. Woods' findings do not provide illumination for the Step Three finding. His non-examining assessment mentions Listing 1.04 but does not state the criteria for meeting the Listing or a rationale for the determination that Plaintiff did not meet a Listing (Tr. 90, 99). While the ALJ indicated that she also relied on Dr. Shelby-Lane's February, 2013 consultative examination, she did not provide a citation to the portion of the consultative examination purportedly supporting the Step Three finding (Tr. 38).

In certain cases, an insufficiently articulated Step Three finding can be cured by a discussion of the evidence supporting the finding at earlier or subsequent steps in the sequential analysis. *See Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411, (6th Cir. January 31, 2006). In contrast here, the Court is unable to discern an explanation for the Step Three finding anywhere in ALJ's determination. First, the administrative opinion does not mention Listing 1.04. To be sure, the ALJ later noted Dr. Shelby-Lane's finding of a normal range of cervical motion, normal straight leg raising, and "no neurological deficits" (Tr. 40). The finding of a normal range of cervical motion and normal straight leg raising arguably supports the finding that Plaintiff did not meet Listing 1.04A. However, the ALJ's discussion of Dr. Shelby-Lane's findings are made two pages after the Step Three finding. It is unclear whether the ALJ made note of the consultative findings to support the Step Three finding, discredit Plaintiff's allegations of limitation, or both (Tr. 40). While some

-15-

of Dr. Shelby-Lane's findings appear to support the Step Three finding, the question of whether the ALJ actually applied the consultative findings when making the Step Three finding is muddied by the ALJ's conclusion that Dr. Shelby-Lane's findings were "vague and not helpful in ascertaining [Plaintiff's] actual functional limitations"[2] (Tr. 40).   Further, while the ALJ dwelled on the portions of the consultative observations supporting a non-disability finding, she failed to provide a rational for rejecting the Dr. Shelby-Lane's accompanying conclusion that Plaintiff was hindered by a slow gait; difficulties in lifting and pushing; and significant postural limitations other than to find that the conclusion was "vague" (Tr. 40, 297-299).   In short, the ALJ's partially adoption of Dr. Shelby-Lane's findings cannot be read to satisfy the Step Three "reasons requirement." *Reynolds* at 424. An ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Commissioner, Social Sec. Administration*, 55 Fed.Appx. 333, 339, 2003 WL 236419, *5 (6th Cir. January 30, 2003); *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995).

The ALJ's failure to provide a reasoned explanation for the Step Three finding is compounded by the her wholesale rejection of Dr. Nelson's November, 2013 finding that Plaintiff was unable to perform even sedentary work (Tr. 41, 238-231) in favor Dr. Woods'

---

[2]Indeed, Dr. Shelby-Lane's finding of a slow gait and limitations in repetitive lifting, pushing, pulling, reaching, and bending does not support the ALJ's finding that Plaintiff was capable of walking up to six hours in an eight-hour workday (Tr. 38, 40, 299).

March, 2013 non-examining finding that she could perform a range of light work (Tr. 40, 90-92). The ALJ gave "no weight" to Dr. Nelson's opinion on the sole basis that it came from a "non-acceptable" medical source (Tr. 41). Dr. Nelson's assessment, including limitations in range of neck motion and upper extremity functioning due to pain and numbness supports a finding of disability under Listing 1.04A.

The ALJ's adoption of the non-examining assessment over the treating one, by itself, does not amount to reversible error. *See* SSR 96–6p, 1996 WL 374180, *3. (July 2, 1996)("In appropriate circumstances," the opinion of non-examining source "may be entitled to greater weight than the opinions of treating or examining sources"). However, the failure to provide any reasons for the rejection of the treating opinion aside from noting that Dr. Nelson was an "unacceptable" medical source constitutes independent grounds for remand. First, while Dr. Nelson, a chiropractor, is not an "acceptable medical source," his opinion "is entitled to consideration due to his expertise and long-term relationship" with Plaintiff. *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); 20 C.F.R. §§ 404.1502, 404.1513. Moreover, in weighing the opinions of "other sources," it is "appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06–3p, *2, 2006 WL 2329939, *2 (August 9, 2006).

The ALJ's one-sentence rejection of Dr. Nelson's opinion suggests that she did not consider any of the required factors. Plaintiff received treatment from either Dr. Nelson or

one of his colleagues numerous times between July, 2012 and the November, 2013 assessment. Dr. Nelson's November, 2013 finding that Plaintiff experienced extremity numbness and pain is not inconsistent with the November, 2012 MRIs of the cervical and lumbar spine showing impingement on the thecal sac at multiple levels (Tr. 287, 308). Dr. Nelson's assessment of Plaintiff's condition is particularly critical, given that she did not have a treating relationship with any "acceptable" medical source (M.D. or D.O.) during the relevant period. Indeed, Dr. Woods, a Medical Doctor, went so far as note that while Plaintiff received frequent treatment, the treators were not "acceptable" medical sources. SSR 06-3p stresses the increasing significance of "other" medical sources in the disability determination:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, *are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. Id.* at *4 (emphasis added).

Because Dr. Nelson and his colleagues were Plaintiff's only "treating" sources for the period in question, the ALJ erred by rejecting his assessment on the exclusive basis that he was an "unacceptable" source. Moreover, while the ALJ relied heavily on Dr. Woods' March, 2013 findings, Dr. Woods' review of the treating records did not have benefit of Dr. Nelson's November, 2013 assessment. Although it is unclear whether Dr. Woods would have credited

-18-

Dr. Nelson's opinion in making the non-examining assessment, Dr. Nelson's opinion is supported by eight months of treating records created after the March, 2013 assessment. *See Hamblin v. Apfel,* 7 Fed.Appx. 449, 451, 2001 WL 345798, *2 (6th Cir. March 26, 2001)("updated" medical records generally accorded more weight than older ones). The ALJ's failure to provide a reasoned explanation for either the Step Three finding or the rejection of Dr. Nelson's opinion warrants a remand.

In addition to these errors, I note that the ALJ's credibility determination is based on a narrow, if not distorted view of the evidence. While the ALJ discounted Plaintiff's allegations on the basis that she had not taken "narcotic-based pain-relieving medications," the ALJ noted elsewhere that Plaintiff declined to take narcotics because she was breast-feeding an infant (Tr. 39). The ALJ acknowledged November, 2012 nerve conduction studies showing bilateral CTS (Tr. 40), but nonetheless concluded that Plaintiff could "handle and reach" on a frequent basis[3] (Tr. 38). While the ALJ accorded significant weight to the July, 2012 hospital records stating that Plaintiff reported only "abdominal pain," following the bus incident (Tr. 41), the November, 2012 MRIs showing herniation with impingement at multiple levels of the spine support both Plaintiff's allegations and Dr. Nelson's November, 2013 assessment[4] (Tr. 41).

---

[3]

The VE's testimony indicates that if Plaintiff were additionally limited to sedentary work with only occasional handling and reaching, she would be limited to work as a surveillance system monitor (800 jobs in the regional economy) (Tr. 65).

[4]

Whether the bus incident was the direct cause of the back condition or exacerbated

The ALJ twice cited Plaintiff's statement that she "would like to get disability only because I have been working as a hard tax paying citizen ever since 1984" (Tr. 39, 42, 202). The ALJ apparently cited the statement to illustrate that Plaintiff believed she was entitled to benefits because of her past contributions to society rather than her medical condition. However, Plaintiff's statement concludes a multi-page self-description of her physical limitations, medical treatment, and occupation background (Tr. 187-201).   In that context, her statement can be just as easily interpreted as a reminder to the administrative decision-makers that she had been a productive member of society until becoming disabled at the age of 40.

The ALJ's failure to provide a rationale for the Step Three findings and her rejection of Dr. Nelson's assessment warrants a remand to the administrative level.  Because it cannot be said that "all essential factual issues have been resolved," a remand for further fact-finding, rather than an award of benefits, is appropriate.  *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir.1994).

## IV.  CONCLUSION

For these reasons, I recommend that Plaintiff's Motion for Summary Judgment [Dock. #17] be GRANTED to the extent that the case be remanded for further administrative proceedings, and that Defendant's Motion for Summary Judgment [Dock. #20] be DENIED.

---

a pre-existing condition is not relevant to whether she was capable of light work at the time of the ALJ's decision.  Whatever the cause, the MRIs of the cervical and lumbar spine support Plaintiff's claims of significant functional limitations.

-20-

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: July 29, 2016

-21-

## **CERTIFICATE OF SERVICE**

I hereby certify on July 29, 2016 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants July 29, 2016.

s/Carolyn M. Ciesla
Case Manager for the
Honorable R. Steven Whalen

-22-